SECOND DIVISION

JUNE 19, 2001

No. 1-00-2210

DONALD LUU, as Father and Next    ) Appeal from the 

Friend of Billy Luu, a Minor, ) Circuit Court of

) Cook County

Plaintiff-Appellant, ) 

) 

v. ) 

) 

PETER KIM and EDMUND KIM, P-K MALL ) No. 96 L 15221

INC., an Illinois Corporation d/b/a) 

P-K DISCOUNT MALL, BUSCHMAN ) 

CONVEYORS, AMERICAN NATIONAL BANK, ) 

as Trustee, and PILSEN PARK ) The Honorables

SHOPPING CENTER, ) Alfred Paul and

) Sophia Hall, 

Defendants-Appellees. ) Judges Presiding.

JUSTICE COUSINS delivered the opinion of the court:

This action was brought for damages resulting from minor-plaintiff Billy Luu's injuries suffered after becoming entangled in a moving conveyor belt at P-K Mall in the Pilsen Park Shopping Center.  Plaintiff's father brought suit against P-K Mall, Peter Kim, Edmund Kim, Pilsen Shopping Center (collectively, defendant-landlords), and Buschman Conveyors (defendant-manufacturer or Buschman).  All defendants brought motions for summary judgment.  All motions were granted in favor of the defendants.  Plaintiff's motion to reconsider was denied.  The issue upon appeal is whether the trial court erred in granting summary judgment in favor of all defendants.  Plaintiff asserts:  (1) under the 
Kahn
 doctrine (
Kahn v. James Burton Co.
, 5 Ill. 2d 615, 126 N.E.2d 836 (1955)), the owner-landlords should have foreseen harm to the child; (2) defendant-landlords owed plaintiff a duty of reasonable care under the circumstances and did not meet that duty; (3) defendant-landlords' negligence was the proximate cause of the injuries; (4) the affidavit of mechanical engineer Seiji Joji should have been admitted; (5) Buschman was the apparent manufacturer of the conveyor belt and as such should be held liable for the injuries; and (6) Buschman negligently designed the component parts of the conveyor belt and should be held liable for the injuries.

We affirm.

BACKGROUND

On November 25, 1995, nine-year-old Billy Luu was inside P-K Mall in Chicago, Illinois, with his father Donald Luu.  Donald Luu leased space in the mall for his business, "Don's Fashions."  On that day, Donald gave Billy money to play with the video games located in the southeast corner of the mall, adjacent to the concession stand.  Donald instructed Billy not to go too far and not to go out of the mall.  Billy's cousin, Jimmy Le, accompanied Billy.

Adjacent to the game room was the doorway and stairwell leading to the second-floor storage area.  During his deposition, Jimmy stated that the door to the stairwell was open when the boys approached, it was open on its own, and he did not notice a string or wire on the doorknob.  The boys walked up the stairs because Billy thought "there were games up there."  There was a conveyor belt in the room but the machine could not be seen from the top of the stairs.  Jimmy stated that he heard a machine go on and immediately thereafter, he heard Billy scream.  Jimmy stated that he did not see whether Billy turned the belt on.  When he did see Billy, Jimmy noticed that Billy was "twitching."   Billy was injured when his arm got caught in the conveyor belt system.  According to a letter written by Dr. John Oldershaw, Billy suffered three fractures to his left arm, shoulder and back strain, and severe head trauma.

During Billy Luu's deposition, Billy stated that he had never been on the second floor of the mall and did not know that there was a conveyor belt on the premises until the day of the accident. 

During deposition, Donald Luu stated that he was notified about Billy's accident approximately 15 minutes after giving Billy the money to play with the video games.  Billy was already away from the conveyor belt when his father saw him.  Donald stated that he was aware of the belt but had never operated the belt in the presence of Billy.

Edmund Kim was the real estate manager and partial owner of P-K Mall in November 1995.  Kim licensed portions of the premises to persons so they could conduct retail activities.  He testified that his father, Peter Kim, does not sign any of the license agreements with mall vendors and does not have a day-to-day management role of P-K Mall.  He stated that the management office of P-K Mall was responsible for the maintenance and upkeep of the second floor storage area.  Kim testified that the vendors had to enter into a separate rental agreement if they wanted to use the storage area on the second-floor.  Kim recalled "telling people the conveyor belt is for moving merchandise only."  He testified that there had never been any other reports of anyone getting anything caught in the conveyor belt.  He also was not aware of any automatic stop mechanism on the conveyor belt.  Kim stated that in all the time that he worked there, since the summer of 1993, the conveyor belt had performed as expected except when the belt had to be tightened.  Kim stated that he was aware that vendors would use a wire or other device to hold the storage room door open.  He also observed graffiti on the walls of the storage room, but did not know who put it there.  He was aware that vendors would sometimes bring their family members with them to the mall.  Kim was asked, "Have you ever seen any of those children accompanying their parents up to the second-floor?"  Kim responded, "I haven't, no."  Counsel further inquired, "Are you aware that they do?"  Kim responded, "Yes *** I have been informed *** [b]y my assistant."

Kim testified that had seen Billy Luu in the video game area in 1991 and 1992 and had, on occasion, played video games with Billy.  Since the accident, Kim has posted caution signs around the storage area and had a locking mechanism installed on the control button of the conveyor belt.  Kim believed that he spoke with Harry Lake, the operating partner for the landlords of P-K Mall, regarding Billy's accident. 

The landlord of P-K Mall is Pilsen Park Shopping Center.  The landlord's responsibilities are limited to maintaining the exterior of the center (parking lot, sidewalks, lighting in the lot, and the fence).  Harry Lake is the operating partner of the premises.  Lake testified that he was aware that a previous tenant, Zayre, acquired the conveyor belt for the storage area.  He further testified that the landlord had no responsibility for maintaining the second-floor storage area, unless the roof leaked or there was some other structural problem. 

Ronald Knoerzer's deposition indicates that the Buschman Company (Buschman) manufactures conveyor belts, which are also assembled by Buschman.  Buschman does not manufacture all of its component parts.  Knoerzer testified that, normally, the operating instructions that are delivered with the conveyor are created under the direction of the engineering department of Buschman.

Defendant-manufacturer filed a counterclaim in 1999 alleging:  Donald and Sophia Luu had a duty to supervise their child so as to avoid injury to him; Peter Kim, Eddie Kim, and P-K Mall were guilty of negligent or careless acts in maintaining the premises; and Harry Lake, Violet Lake, Apex Investment Associates, Inc., and Esther Shinderman Revocable Trust dated October 24, 1991, d/b/a Pilsen Park Shopping Center, had a duty to exercise a degree of care in the ownership and control of their property to avoid injury to Billy.  In June 1999, Peter Kim, Eddie Kim, P-K Mall, Harry Lake, Violet Lake, Apex Investment Associates, Inc., and Esther Shinderman Revocable Trust dated October 24, 1991, d/b/a Pilsen Park Shopping Center, filed a motion in response to Buschman's counterclaim.

All defendants filed motions for summary judgment.  On November 19, 1999, there was a hearing on the defendants' motions for summary judgment.  At the November 19, 1999, hearing, plaintiff's counsel informed the judge that while he possessed an affidavit stating that the conveyor belt was defective, he did not bring it with him to the hearing because he did not expect for the hearing to actually go on that day.  The judge stated:  "But, as you know, it is not sufficient to file a response and say, 'I am getting an expert's opinion.'  It should be a part of the materials I can review here today for today's hearing."  During that November 19, 1999, hearing the judge stated to plaintiff's counsel:

  "I will give you 
60 days
 before I give him [Rule] 304(a) language to either take Mr. Kanower's [
sic
] dep, produce some documents indicating to me that they are something other than, quote, a components parts manufacturer and produce 
any
 
affidavits
 
that
 
you
 
wish
 
to
 
produce
 
to
 
me
 to consider on this.  Okay?"  (Emphasis added.)

In an order dated November 19, 1999, the judge held that as a matter of law, Billy Luu was a trespasser at the time and location of the accident and that defendant-landlords owed no duty to plaintiff other than to refrain from wilful and wanton conduct and that there existed no legal proximate cause between the conduct of defendants and the injuries sustained by Billy.  Summary judgment was entered in favor of defendant-landlords.  

Plaintiff filed a motion for reconsideration on December 20, 1999, asserting that plaintiffs had a right to have the trier of fact consider the issues of the duty owed to the minor plaintiff and determine the proximate cause of Billy's injuries.  Plaintiff filed a memorandum in support of his motion for reconsideration on January 28, 2000, with a copy of Seiji Joji's affidavit attached.

On April 21, 2000, a status hearing was held regarding plaintiff's motion for reconsideration.

On May 31, 2000, summary judgment was granted in favor of defendant-landlords and against plaintiff on count I of plaintiff's second amended complaint and count II of Buschman's counterclaim.

On June 7, 2000, during a hearing on plaintiff's motion to reconsider, argument was heard regarding the admission of Seiji Joji's affidavit.  
Seiji Joji's affidavit describes his qualifications as a supervising mechanical engineer licensed by the State of Illinois.  The affidavit indicates that he reviewed photographs of the conveyor system at issue here and notes that the system lacks guards and a safety shut-off switch.  Then the affiant concludes:

   "The component parts were defective when they left the control of the manufacturer. *** The components could only be assembled in one way in accordance with the design specifications and installation instructions provided by 
BUSCHMAN and consequently the components themselves were defective. *** It is my opinion that the equipment is not reasonably safe for operation."

At the June 7, 2000, hearing, the trial judge held that the affidavit should be stricken but that, even if it were considered, his ruling to strike would not change based on the contents of the affidavit.  On June 7, 2000, plaintiff's motion to reconsider was denied.  

On June 15, 2000, a hearing was held upon the court's own motion.  The transcript of that hearing is not in the record upon appeal.  In an order dated June 15, 2000, the trial court held that the defendant-manufacturer's motion to strike the supplemental affidavit of Seiji Joji was denied, plaintiff's motion for reconsideration was denied, and the summary judgments entered on November 19, 1999, would stand.

Plaintiff now appeals the orders entered on November 19, 1999, January 28, 2000, April 21, 2000, May 31, 2000, June 7, 2000, and June 15, 2000.  

We affirm.

ANALYSIS

Standard of Review

Appellate courts apply a 
de
 
novo
 standard when reviewing summary judgment rulings.  
Anglin v. Oros
, 257 Ill. App. 3d 213, 216, 628 N.E.2d 873 (1994).  Absent an abuse of discretion by the trial court, summary judgment will not be reversed.  
Solomon v. American National Bank & Trust Co.
, 243 Ill. App. 3d 132, 134, 612 N.E.2d 3 (1993).

Summary judgment is appropriate only when the pleadings, depositions, admissions, and affidavits on file, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.  
Anglin
, 257 Ill. App. 3d at 216; 
In re Estate of Ciesiolkiewicz
, 243 Ill. App. 3d 506, 510, 611 N.E.2d 1278 (1993).  The purpose of summary judgment is not to try an issue of fact but, rather, to determine whether a triable issue of fact exists.  
Anglin
, 257 Ill. App. 3d at 216.  Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied.  
Pyne v. Witmer
, 129 Ill. 2d 351, 358-59, 544 N.E.2d 1304 (1989).  

At the summary judgment stage, the court must construe the evidence strictly against the movant and liberally in favor of the nonmovant.  
Taliaferro v. One Grand Place Venture
, 256 Ill. App. 3d 429, 432-33, 628 N.E.2d 815 (1993).  To withstand a summary judgment motion, the nonmoving party need not prove his case at this preliminary stage but must present some factual basis that would support his claim. 
 
Taliaferro
, 256 Ill. App. 3d at 432.   

I

Plaintiff initially contends that pursuant to 
Kahn v. James Burton Co.
, 5 Ill. 2d 615, 126 N.E.2d 836 (1955), he has shown that Billy's presence was foreseeable.  The defendant-landlords respond that even if this court finds that a factor of the 
Kahn
 doctrine has been met, this court should still affirm the decision of the trial court because any action by the defendant-tenants was not the legal cause of Billy's injury.

In 
Kahn
, the plaintiff, an 11-year-old child, was injured when a pile of lumber upon which he had been playing toppled over and some of the boards fell on him.  
Kahn
, 5 Ill. 2d at 616.  The issue before the Illinois Supreme Court was "whether the lumber company in the exercise of ordinary care could reasonably have anticipated the likelihood that children would climb onto the lumber and would be injured if it were not securely piled."  
Kahn
, 5 Ill. 2d at 623.  While the 
Kahn
 court did not specifically address a landlord-owner's duty to children, we find that case controlling in the instant case.  

As a general rule, children have no greater rights to go upon the land of others than adults, and their minority in and of itself does not impose a duty upon the occupier or controller of the premises to prepare for their safety, except where:  (1) the owner or occupier of the land knew or should have known that children habitually frequent the property; (2) a defective structure or dangerous condition was present on the property; (3) the defective structure or dangerous condition was likely to injure children because they are incapable, because of age and immaturity, of appreciating the risk involved; and (4) the expense and inconvenience of remedying the defective structure or dangerous condition were slight when compared to the risk to children.  
Mount Zion State Bank & Trust v. Consolidated Communications, Inc.
, 169 Ill. 2d 110, 117, 660 N.E.2d 863 (1995), citing 
Kahn
, 5 Ill. 2d at 625.

We hold that, in the instant case, plaintiff has failed to meet the first criterion of the 
Kahn
 doctrine.  Plaintiff has failed to articulate any facts that indicate that P-K Mall, Peter Kim, Edmund Kim, or Pilsen Park Shopping Center knew or should have known that children frequented the second-floor storage room of the mall or operated the conveyor belt.  The testimony from Edmund Kim that he was aware that vendors would bring their families to the mall, that vendors' children would sometimes accompany them to the storage room, or that children frequented the video game area is not enough for plaintiff to meet the foreseeability aspect of the 
Kahn
 doctrine.  Further, there is no testimony or evidence that defendants had any knowledge that a child has ever turned on the conveyor belt or that any child knew that the belt was located in the storage room.

Plaintiff avers that there was graffiti present on the walls of the room, which should have notified the defendant-landlords that children frequented the area.  However, there is no testimony to indicate when or how often those markings were placed there or who placed them there.  There is no evidence that children were the ones who placed the graffiti there.  Kim's testimony that he was aware of the presence of the graffiti is not enough to create knowledge on the part of defendants.  See 
Benamon v. Soo Line R.R. Co.
, 294 Ill. App. 3d 85, 93, 689 N.E.2d 366 (1997).

II

Plaintiff next contends that defendant-landlords' negligence was the proximate cause of Billy's injury.  In a cause of action alleging negligence, the plaintiff must establish the existence of a duty, a breach of that duty, and an injury proximately resulting from that duty.  
Quintana v. City of Chicago
, 230 Ill. App. 3d 1032, 1036, 596 N.E.2d 128 (1992).  There are two main branches that make up a proximate cause analysis:  (1) cause in fact; and (2) legal cause.  
First Springfield Bank & Trust v. Galman
, 188 Ill. 2d 252, 258, 720 N.E.2d 1068 (1999). 

In 
First Springfield
, a woman was killed when she was struck by a car as she crossed a street at mid-block instead of at a marked pedestrian crosswalk.  The co-defendant motorist, Galman, argued at trial that she could have swerved to miss the pedestrian had the defendant truck driver for ADM Trucking, Inc., not parked his truck in a no-parking zone.  A jury entered a general verdict, finding that the plaintiff's damages totaled $1 million.  The jury also found the truck driver and his employer 50% at fault, the co-defendant motorist 5% at fault, and the pedestrian 45% at fault.  The trial court entered judgment on the verdict.  The truck driver and his employer appealed.  The appellate court affirmed the trial court's decision.  However, the Illinois Supreme Court reversed.  
First Springfield
, 188 Ill. 2d at 262.

The primary issue on appeal was whether the defendants' negligence was the proximate cause of the plaintiff's injuries.  The Illinois Supreme Court answered in the negative, stating that although the defendants' actions were a cause in fact of the injury, they were not the legal cause.  
First Springfield
, 188 Ill. 2d at 260.  The Court concluded that it was not reasonably foreseeable that violating a no-parking sign at mid-block would likely result in a pedestrian ignoring a marked crosswalk at the corner, walking to mid-block and attempting to cross a designated truck route blindly, in clear violation of the law.  
First Springfield
, 188 Ill. 2d at 261.

On the proximate cause issue in the instant case, it is our view that, the rationale of 
First Springfield
 is controlling.   Accordingly, we hold that the trial court did not err in granting summary judgment in favor of the defendant-landlords.

III

Plaintiff asserts that the affidavit of Seiji Joji should not have been stricken because it was presented in a timely manner.  Defendant-manufacturer responds that plaintiff's claim that the affidavit of Seiji Joji should have been admitted is moot.

On June 7, 2000, the trial court in the instant case struck the affidavit of Seiji Joji and stated: "I think the affidavit has to be stricken because I think it should have been presented in a more orderly manner *** even if I were going to consider the affidavit, I don't think my ruling is ever going to change."  Also, the court stated that the affidavit was conclusionary, did not comply with Supreme Court Rule 191(a) (145 Ill. 2d R. 191(a)), and did not contradict Ronald Knoerzer's testimony.  On June 15, 2000, however, the trial court announced that it had reconsidered the ruling regarding the affidavit of plaintiff's expert and denied the defendant-manufacturer's motion to strike the affidavit.  We agree with the defendant-landlords' assertion that plaintiff's contention is moot. 

IV

Plaintiff's next assertion is that the defendant-manufacturer negligently designed the component parts of the conveyor belt and should be held liable for plaintiff's injuries suffered as a result of the defective design under the theory of apparent manufacturer.  Further, plaintiff contends that "[t]he defect in the design of the conveyor belt, and therefore in the component parts when put together as a whole, existed at the time that the parts left the Buschman premises."  Defendant-manufacturer responds that it did not negligently design any part of the conveyor belt and the "apparent manufacturer" doctrine is not at issue here. 

Under the doctrine of apparent manufacturer, a company that holds itself out to the public as the manufacturer of a product is liable for the injuries caused by that product if it is found to be unreasonably dangerous.  
Root v. JH Industries, Inc.
, 277 Ill. App. 3d 502, 506, 660 N.E.2d 195 (1995).  "The primary rationale for imposing liability on the apparent manufacturer of a defective product is that it has induced the 
purchasing public
 to believe that it is the actual manufacturer, and to act on this belief--that is, to 
purchase the product in reliance
 on the apparent manufacturer's reputation and skill in making it."  (Emphasis in original.)  
Hebel v. Sherman Equipment
, 92 Ill. 2d 368, 375, 442 N.E.2d 1999 (1982).

Buschman concedes that the parts of the conveyor are made and sold by it, but denies designing "the system as installed or the controls."  There is, however, no testimony or facts averred that demonstrate that the conveyor belt or its component parts exposed those who came into contact with it to an unreasonable risk of harm.  Plaintiff here has only demonstrated that the door leading to a storage room was left open and when the conveyor belt was activated, a child was injured by the conveyor belt's mechanisms.  The apparent manufacturer doctrine is not applicable here. 

The fact that an injury occurred does not in and of itself prove that a product is defective.  
Depre v. Power Climber Inc.
, 263 Ill. App. 3d 116, 118, 635 N.E.2d 542 (1994).  Rather, plaintiff must show that his injuries derived from a distinct defect in the product which subjects those exposed to the product to an unreasonable risk of harm. 
 
Depre
, 263 Ill. App. 3d at 118.  We hold that the plaintiff has failed to demonstrate, either through argument or supporting affidavits, which parts of the belt were unreasonably dangerous to hold defendant-manufacturer responsible for Billy's injuries. 
 

For the foregoing reasons, the grant of the summary judgments is affirmed.

CAHILL, P.J., and McBRIDE, J., concur.