DEBBIE TZAKIS, Plaintiff-Appellant, v. DOMINICK'S FINER FOODS, INC., Defendant-Appellee.

First District (4th Division)  No. 1—04—0261

Opinion filed March 24, 2005.

Law Offices of Richard M. Craig, P.C., of Chicago (Richard M. Craig, of counsel), for appellant.

McCullough, Campbell & Lane, of Chicago (Patrick M. Graber and Veronica Nulman, of counsel), for appellee.

PRESIDING JUSTICE REID delivered the opinion of the court:

This appeal stems from a negligence action relating to injuries sustained in a slip and fall involving ice and snow in the parking lot of a grocery store. Following the granting of a motion for summary judgment in favor of Dominick's Finer Foods (Dominick's), Debbie Tzakis filed the instant appeal arguing that the trial court erred in granting summary judgment in the face of evidence presented to the court. Dominick's argues that Tzakis failed to present competent evidence sufficient to show that there was an unnatural accumulation of ice and snow. For the reasons that follow, we affirm the judgment of the trial court.

## BACKGROUND

After a snowfall on or just before January 4, 2000, Tzakis slipped and fell on an accumulation of ice in a parking lot owned and maintained by Dominick's. Tzakis filed a personal injury lawsuit, claiming that Dominick's was negligent for causing and allowing an unnatural accumulation of snow, water or ice to occur in the parking lot near the front door of the grocery store. Dominick's answered the complaint, denying the substantive allegations and raising the affirmative defense of contributory negligence. On the same day, Tzakis propounded written discovery that, based upon Supreme Court Rule 213 (177 Ill. 2d R. 213) and Supreme Court Rule 214 (166 Ill. 2d R. 214), Dominick's was to answer within 28 days.

On December 20, 2001, Tzakis brought an emergency motion to compel Dominick's compliance with outstanding discovery. According to Tzakis, the purpose of the motion was to ascertain the identity of the company responsible for snow removal at the grocery store. By agreed order, the trial court gave Dominick's until December 27, 2001, to answer the discovery or be estopped from asserting that a third-party defendant is liable due to any agreement or contractual relationship for the maintenance of the premises. Dominick's thereafter identified Community Towing & Snow Plowing as the entity with which it contracted to remove the snow. It was later determined that the correct business name is Community Towing, Inc.

Tzakis testified in her deposition that she went to Dominick's on the day of the incident following snowfall she characterized as "not too heavy." Once the snow had stopped falling, Tzakis drove to Dominick's for lunch. She testified that there was snow on the ground when she arrived but was not asked to clarify whether it was freshly fallen snow or snow that had been there from a previous snowfall. Tzakis testified that she arrived, parked the car, then slipped and fell as she tried to walk into the store. She slipped on the driveway portion of the parking lot, near the entrance.

Dominick's maintains that, in the time period immediately following the slip and fall, no pictures were taken of the area. Tzakis disputes this fact, claiming that she was first told that Dominick's had no photographs in its possession. She claims she was later told that an investigation was being made regarding the photographs. Finally, Tzakis was finally told that no photographs were found

At her deposition, Tzakis produced a photograph that Dominick's claims was taken one to two months after the fall. Tzakis explained that the photograph depicted the conditions on the day she fell. According to Dominick's, no other individual familiar with the case came forward to authenticate the photograph. Tzakis also testified that,

when she arrived, there was snow and ice in the parking lot but it had been cleared from the driveway area.

John Boudart was also deposed regarding this case. Boudart is the general manager of the Dominick's. He did not work at the store on the day of the fall. He testified that snow was removed by the third-party entity and piled up in the rear of the parking lot. Boudart also gave an opinion that, if there was any ice in the area where Tzakis slipped and fell, it would have naturally accumulated. Tzakis points out that Boudart was not present on the day of the fall and could, therefore, draw no conclusions regarding the condition of the snowfall on that date.

Linda McInerney was subsequently deposed. She is employed as the customer service manager at that particular Dominick's location. McInerney testified that she had no independent recollection of the events of the day in question. However, she did testify that, when a person claims to have slipped and fallen, the store manager speaks with that person and prepares a written report. If the store manager is not on duty that day, McInerney explained that the highest ranking employee on duty prepares the report. In this case, McInerney prepared the incident report. Normal procedure is for photographs to be taken and appended to the report.

On August 5, 2003, Philip Johnson was deposed in connection with this lawsuit. He is the owner of Community Towing, Inc. (Community Towing). Community Towing was contracted several times to plow Dominick's various parking lots during the 1999-2000 winter. According to Johnson, he meets with the store managers before the winter starts to determine where to put the plowed snow and ice. His company is provided with blueprints of the subject parking lots to assist in the directions of where to pile the snow. According to Johnson, he was under instructions not to apply salt to the area unless directed by Dominick's to do so. On December 30, 1999, his company was asked to salt but not plow the subject parking lot. His company received $340 as payment. When Community Towing salts but does not plow an area, it makes no additional efforts to remove any melted ice. According to Johnson, no further snow removal was requested or performed until January 18, 2000. Johnson also testified that salt melts ice, leaving water in its place. Tzakis believes the application of salt without any snow removal should be treated by this court as evidence that Dominick's is aware of a tendency of ice to collect in the parking lot. Tzakis, therefore, disputes Dominick's interpretation that it had no actual or constructive notice of a problem with ice and snow in the parking lot.

According to Dominick's, with the exception of Tzakis' testimony

that it snowed on January 4, 2000, no evidence of climatological conditions for the period on or after January 4, 2000, was presented in this case. There is also no evidence that Dominick's had either actual or constructive notice of any problematic conditions within its parking lot.

The trial court entertained a fully briefed summary judgment motion filed by Dominick's. The trial court granted the motion, agreeing with Dominick's that Tzakis failed to introduce anything to show that there was an unnatural accumulation of ice and snow in the parking lot of the grocery store. The trial court ruled that any conclusion the jury might reach would be speculation. This appeal followed.

## ANALYSIS

Tzakis argues on appeal that the trial court erred in granting summary judgment because there was sufficient evidence for a trier of fact to conclude that the ice upon which she stepped was not a natural accumulation. Tzakis maintains that, instead of a natural accumulation, she slipped on remnants of an effort made to melt ice by the application of salt to the area five days before the incident. Tzakis also asks this court to abrogate and reconsider the long-standing rule that a business owner is not responsible for naturally accumulated ice and snow. Tzakis believes that there is no positive public policy in allowing business owners to invite customers into their establishments and ignore the hazard the ice and snow poses when it accumulates.

Dominick's responds that the trial court was correct because Tzakis did not meet her burden of showing that she slipped on anything but a natural accumulation of ice and snow. All Tzakis presented to the trial court was her opinion and a photograph taken one or two months after the incident. Dominick's argues this is hardly indicia of improper plowing or maintenance. Dominick's also argues that the deposition testimony of Johnson, Boudart and McInerney contradicts Tzakis' unfounded assertion. Dominick's argues that Tzakis is asking this court to ignore established precedent in order to create a question of fact based upon mere speculation. According to Dominick's, the lack of climatological evidence for the time period in question seriously undercuts the plaintiff's case and supports the trial court's ruling. Dominick's contends that the lack of snow removal operations between December 30, 1999, and January 4, 2000, could also be explained by good weather. Though just as speculative, it could be that the parking lot cleared in that time, only to be snowed on during the snowfall on the day of the fall.

According to Dominick's, Tzakis has presented nothing to justify a change in the law regarding natural accumulations of snow and ice.

Dominick's maintains that, though Tzakis finds the result of the natural accumulation rule harsh in this case, it is the law. The existence of a natural accumulation rule does not protect a store owner from liability if there is evidence of negligence. Dominick's argues that this is not such a case, as the plaintiff has failed to meet her burden.

In reply, Tzakis argues there is a question of fact as to whether the ice and snow on the ground on the day she fell was a natural accumulation. Tzakis argues that the application of salt five days before the incident raises the inference of triable issues of fact. These are based on the idea that the defendant's agents melted the snow and ice which was allowed to refreeze, thereby creating a dangerous, nonnatural condition. Tzakis argues this is supported by her uncontradicted testimony.

## Summary Judgment

"In all appeals from the entry of summary judgment, we conduct a *de novo* review of the evidence in the record. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). Summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000); *Bier v. Leanna Lakeside Property Ass'n*, 305 Ill. App. 3d 45, 50 (1999). 'Summary judgment is a drastic means of resolving litigation and should be allowed only when the right of the moving party is clear and free from doubt.' *Bier*, 305 Ill. App. 3d at 50. 'Therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact.' *Espinoza*, 165 Ill. 2d at 114. If a party moving for summary judgment introduces facts which, if not contradicted, would entitle him to a judgment as a matter of law, the opposing party may not rely on his pleadings alone to raise issues of material fact. *Hermes v. Fischer*, 226 Ill. App. 3d 820, 824 (1992)." *Myers v. Levy*, 348 Ill. App. 3d 906, 913 (2003).

A plaintiff need not prove his or her case at a summary judgment hearing but must present facts to show the origin of the ice was unnatural or caused by the defendant. *Gilberg v. Toys "R" Us, Inc.*, 126 Ill. App. 3d 554, 558 (1984), citing *Technical Representatives, Inc. v. Richardson-Merrell, Inc.*, 107 Ill. App. 3d 830, 833 (1982), and *Bakeman v. Sears, Roebuck & Co.*, 16 Ill. App. 3d 1065, 1070 (1974). "In an action for negligence, the plaintiff must set forth sufficient facts to establish a duty owed by defendants to the plaintiff, a breach of that

duty and an injury proximately caused by the breach." *Graf v. St. Luke's Evangelical Lutheran Church*, 253 Ill. App. 3d 588, 591 (1993), citing *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 411 (1991).

■ "A property owner has no duty to remove a natural accumulation of snow and ice from his property; however, a property owner who voluntarily undertakes the removal of snow and ice can be subjected to liability where the removal results in an unnatural accumulation of snow or ice that causes injury to a plaintiff." *Russell v. Village of Lake Villa*, 335 Ill. App. 3d 990, 994 (2002), citing *Nowak v. Coghill*, 296 Ill. App. 3d 886, 893 (1998). Therefore, "[i]n order to avoid summary judgment in a case such as this one, a plaintiff must allege sufficient facts for a trier of fact to find that defendants were responsible for an unnatural accumulation of water, ice or snow which caused plaintiff's injuries. (*Finn v. Dominick's Finer Foods, Inc.* (1993), 244 Ill. App. 3d 278, 281; *Crane [v. Triangle Plaza, Inc.*, 228 Ill. App. 3d 325, 328 (1992)].) While there is generally no duty to remove natural accumulations of ice and snow, a voluntary undertaking may subject defendant to liability if it is performed negligently. (*Wells v. Great Atlantic & Pacific Tea Co.* (1988), 171 Ill. App. 3d 1012, 1017; *Stiles v. Panorama Lanes, Inc.* (1982), 107 Ill. App. 3d 896.) The mere removal of snow leaving a natural ice formation underneath does not constitute negligence. (*Wells*, 171 Ill. App. 3d at 1017-18; *McCann v. Bethesda Hospital* (1979), 80 Ill. App. 3d 544, 549.) Liability will be imposed, however, where a plaintiff shows that an injury occurred as the result of snow or ice produced or accumulated by artificial causes or in an unnatural way, or by the defendant's use of the premises." *McCann*, 80 Ill. App. 3d at 548; *Fitzsimons v. National Tea Co.* (1961), 29 Ill. App. 2d 306, 318; *Graf*, 253 Ill. App. 3d at 591-92.

The trial court agreed with the defendant that Tzakis has failed to provide competent evidence of an unnatural accumulation of snow and ice. Tzakis argued that, "if you put down salt and then it melts and then it freezes, that is not a natural accumulation of ice. That's unnatural. It has been manipulated by the effort to put down salt." Tzakis argues that a jury could conclude that the refreezing of melted ice, under these circumstances, was unnatural. However, in response to the trial court's questioning, plaintiff's counsel admitted that there was intervening snow five days after the salt was put down. Plaintiff's counsel argued that nothing was presented to show that snow *accumulated* on that day. However, Dominick's argued that, by more than mere speculation, the burden was on Tzakis to show an unnatural accumulation. The trial court, in ruling on the motion for summary judgement, made the following statement that explains its reasoning:

"Well, a clear driveway doesn't indicate—doesn't mean it's unnatural either. Just because a driveway has been cleared and not down to the pavement, doesn't mean—doesn't render it now an unnatural accumulation. It had to have done something negligently or there has to be a defect ***."

■ Tzakis argues that Dominick's, through the auspices of Community Towing, Inc., melted the ice that was allowed to refreeze. The salt was put down five days prior to the injury. While she admits that it snowed the morning of her fall before she left home for the grocery store, Tzakis argues her admission does not indicate that ice on the property was natural. When asked whether the whole parking lot was covered with snow and ice, Tzakis testified that "[n]ot the whole parking lot. It's clean, but not complete clean. It look like someone cleaned little bit, you know, the—but not—no, no, not complete clean, because lot of—wherever the cars really has a lot of ice all over." Tzakis also looked at a photograph of the parking lot taken after the fact and testified that it was a "fairly accurate representation of what the parking lot looked like *** the day of the accident." As a matter of law, this court has previously rejected Tzakis' argument, stating that the "mere sprinkling of salt, causing ice to melt, although it may later refreeze, does not aggravate a natural condition so as to form a basis for liability on the part of the property owner." *Harkins v. System Parking, Inc.*, 186 Ill. App. 3d 869, 873 (1989), citing *Stiles v. Panorama Lanes, Inc.*, 107 Ill. App. 3d 896 (1982). Without a causal nexus between Dominick's actions and the creation of an unnatural accumulation of ice and snow, Tzakis' argument is insufficient to carry the day. Dominick's, through the efforts of Community Towing on December 30, did nothing as a result of the fresh snowfall. In fact, Dominick's evidently took no action relating to the condition of its parking lot until well after the date Tzakis fell. Additionally, there is nothing beyond speculation in the record to suggest that the presence of the ice when she fell was a direct result of the salting on December 30. Such speculation is simply not enough to create a genuine issue of material fact sufficient to survive a motion for summary judgment. We must conclude that the trial court was correct in granting summary judgment as a matter of law.

## Natural Accumulation Rule

■ Tzakis next argues that this court should depart from the longstanding natural accumulation rule. However, she provides no justifiable basis for such a change, other than her suggestion that it is a bad idea that allows business owners to avoid liability for the accumulation of ice and snow. This suggestion has been made and rejected in other cases such as *Lapidus v. Hahn*, 115 Ill. App. 3d 795, 801 (1983),

*Watson v. J.C. Penney Co.*, 237 Ill. App. 3d 976 (1992) (up to the legislature to make a change in the natural accumulation rule), and *Gilberg*, 126 Ill. App. 3d 554.

> "The rule exonerating landlords from liability for natural accumulations recognizes the climatic vagaries of this area with its unpredictable snowfalls and frequent temperature changes. Snowstorms cannot be foreseen or controlled. Thus it has been considered that another standard would impose an unreasonable burden of vigilance and care on landlords. (*Gehrman v. Zajac* (1975), 34 Ill. App. 3d 164, 340 N.E.2d 184.) But the construction and maintenance of the landlord's premises are within his control. It is not imposing an undue burden on him to require him not to add to the difficulties facing Illinois residents from natural accumulations of ice and snow by permitting unnatural accumulations due to defective construction or improper or insufficient maintenance of the premises." *Lapidus*, 115 Ill. App. 3d at 801, citing *Erasmus v. Chicago Housing Authority*, 86 Ill. App. 3d 142 (1980), and *McCann*, 80 Ill. App. 3d 544.

In light of established precedent in this area of the law, and Tzakis' failure to present a compelling argument in her favor, we decline to depart from the natural accumulation rule.

## CONCLUSION

In light of the foregoing, the decision of the trial court to grant summary judgment is affirmed. We decline to reach Tzakis' remaining contentions.

Affirmed.

THEIS and GREIMAN, JJ., concur.