# Illinois Official Reports

## Appellate Court

---

### *Kasper v. McGill Management Inc.*, 2019 IL App (1st) 181204

---

| | |
|---|---|
| Appellate Court Caption | GORDON KASPER, Plaintiff-Appellant, v. McGILL MANAGEMENT INC., an Illinois Corporation, and WOODSTONE TOWNHOME HOMEOWNER'S ASSOCIATION, an Illinois Not-for-Profit Corporation, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-18-1204 |
| Filed | May 23, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-012872; the Hon. John H. Ehrlich, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Alvin W. Block, Jerome E. Boyle, and Rebecca R. Trayber, of Alvin W. Block & Associates, of Chicago, for appellant.<br><br>Matthew Peterson and Gregory B. Bolduc, of Morse Bolduc & Nardulli, LLC, of Chicago, for appellee McGill Management Inc.<br><br>James R. Branit and Scott D. Stephenson, of Litchfield Cavo LLP, of Chicago, for other appellee. |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Justices Reyes and Burke concurred in the judgment and opinion.


## OPINION

¶ 1   Plaintiff, Gordon Kasper, filed a complaint, alleging that he slipped on ice on a sidewalk outside his townhome on December 26, 2013. Plaintiff sought damages from his homeowner's association, Woodstone Townhome Homeowner's Association (Woodstone), and the snow removal contractor, McGill Management Inc. (McGill) (collectively, defendants). In this court, plaintiff appeals an order granting summary judgment to defendants.

¶ 2   In plaintiff's December 22, 2015, complaint, he alleged that he was walking on the sidewalk to retrieve mail from his mailbox near 230 Woodstone Circle, when he fell to the ground. Plaintiff alleged that McGill had a duty to maintain the "side walks [*sic*] and walkways, entrances and exists [*sic*], in a reasonably safe condition." He further alleged that McGill disregarded that duty, and instead "permitted the unnatural accumulation of ice and snow to evolve, and *** failed to properly maintain, clean, remove, and clear the aforementioned sidewalks, walkways, and entrances and exists [*sic*]," allowing them to "become dangerously slippery and unsafe for use."

¶ 3   Regarding defendant Woodstone, plaintiff alleged that it "had a duty to operate, manage, maintain and oversee, among other things, the maintenance of the common areas of the subject premises, which included removal of snow and ice." Plaintiff alleged that Woodstone disregarded this duty and "failed to oversee" McGill's maintenance, "which was performed in such a manner as to permit the areas to *** evolve into slip hazards" with "the unnatural accumulation of ice and snow."

¶ 4   In plaintiff's deposition, he testified that he resided in a townhome in Buffalo Grove. On December 26, 2013, plaintiff returned home from work, parked his vehicle in his driveway, and walked on a sidewalk toward a set of mailboxes to collect his mail. On his way to the mailboxes, plaintiff fell to the ground. As he lay on the ground, plaintiff realized that he fell on ice because he could feel the ice with his hands. There was a thin, less than one inch deep, layer of powdered snow covering the ice.

¶ 5   Plaintiff remembered that it had snowed the evening before his fall, but he did not know how much accumulation there had been. He did not know if it had snowed on the day of his fall, because he had been at work downtown during the day.

¶ 6   Plaintiff did not see any defects in the sidewalk. Plaintiff had previously noticed that there was a downspout near the garages on the building at 230 Woodstone Circle, where water would run off the downspout, across a concrete slab, and onto the lawn and sidewalk. He had seen that occur in the summertime. He did not recall if he ever mentioned it to defendants. At the time of his fall, plaintiff did not see water running from the downspout to the sidewalk. After he fell, plaintiff used his cell phone to call his neighbor, Peggy Corey, for help.

¶ 7   In Corey's deposition, she testified that after receiving a phone call from plaintiff, she went outside and saw plaintiff on his hands and knees. He said to Corey that his "leg let go" and he fell on his side. Corey dialed 911, and an ambulance came to take plaintiff to the hospital.

Corey testified that, at the time of plaintiff's accident, it was very cold. Corey saw snow on the grass, but did not see any snow or ice on the sidewalk where plaintiff fell.

¶ 8 Corey testified that she was on the homeowner's association board of Woodstone. At the time of her deposition, she was the president of the association, and she had been a board member since 2011 or 2012. The board had not received any prior complaints regarding the downspouts, and no one had brought up any issues involving snow and ice. She was unaware of any other claims regarding snow and ice, or any other slip-and-fall injuries at the Woodstone property. Plaintiff knew that Corey was a board member. Corey and plaintiff spoke occasionally, but he never mentioned any issue about the downspout. Corey stated that her building had the same downspout as the one referenced by plaintiff, and she had never noticed any defects or problems with the way the water flowed out of the downspout.

¶ 9 Woodstone contracted with McGill to provide certain snow removal services. The contract between Woodstone and McGill provided that McGill would provide snow plowing services to certain areas, including "all approach sidewalks," after snowfalls of two inches or more. Woodstone and McGill explicitly recognized that some ice and snow would remain on the ground after plowing, and "[u]pon [Woodstone]'s request," McGill would provide salt for the sidewalks, driveways and streets, at an extra cost." Another provision of the contract provided that "[a]ll fire hydrants and mailboxes will be kept accessible at all times as part of the contract." Corey confirmed that McGill would clear snow only when there had been a snowfall of two inches or more, and that Woodstone had never requested that McGill spread salt. She further stated that specifically, on the day of, and in the days prior to, plaintiff's fall, there had been no snowfall of more than two inches that would have caused McGill to engage in snow removal efforts, and Woodstone did not request that McGill spread salt.

¶ 10 Weather reports of conditions at Chicago Executive Airport, approximately five miles from Woodstone, indicated that there was "light snow" the day before plaintiff's fall, on December 25, 2013, between 4:52 a.m. and 6 a.m., and between 3:52 p.m. and 8:52 p.m., with "0.00 in." of accumulation. There was also "light snow" recorded on December 26, 2013, between 10:52 a.m. and 11:52 a.m., also with "0.00 in." of accumulation.

¶ 11 On November 29, 2017, McGill moved for summary judgment. McGill argued that there was no evidence that the snow and ice accumulation was unnatural, and that "under the natural accumulation rule in Illinois[,] property owners and business operators bear no liability for slip and fall accidents caused by a natural accumulation of ice." Although plaintiff "believed" that he slipped on ice coming from a nearby downspout, McGill asserted that plaintiff's belief was merely speculative and that liability cannot be based upon mere speculation. McGill also contended that it was protected under the Snow and Ice Removal Act (Act) (745 ILCS 75/0.01 *et seq.* (West 2012)) and that there was no evidence to suggest that the snow or ice on which plaintiff slipped was caused by any act by McGill or that the ice was created by any snow or ice removal operations.

¶ 12 The next day, November 30, 2017, Woodstone also moved for summary judgment. Woodstone asserted that there was no evidence showing that there was an unnatural accumulation of snow or ice that injured plaintiff and that Woodstone did not owe a duty to remove natural accumulations. Woodstone noted that there was "nothing beyond mere speculation to suggest that the ice plaintiff fell on was the direct result of a design defect with a downspout on a neighboring house." Woodstone further asserted that it never had any notice of water or ice pooling on the sidewalk where plaintiff fell.

¶ 13 On December 29, 2017, plaintiff filed a combined response to both motions for summary judgment. Plaintiff stated that he was

> "*not* suing for a natural accumulation of snow and ice. He's suing because the defective design of the drainage system at this residential subdivision creates an unnatural accumulation of ice on a sidewalk used by residents and other pedestrians, at a specific location where residents' attention is drawn to a mailbox in the parkway and away from the sidewalk." (Emphasis in original.)

Plaintiff maintained that the case was controlled by *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, in which the supreme court reversed a summary judgment order based on evidence of a defective condition leading to the formation of ice on which the plaintiff in that case slipped.

¶ 14 On February 2, 2018, the matter came before the court for a ruling on the two motions for summary judgment. The court initially addressed the applicable standards, noting that a plaintiff "in a slip and fall case involving snow and ice *** has to show that the accumulation of snow and ice was unnatural and that the property owner had actual or constructive notice of the condition." The court noted that:

> "Here the testimony from the plaintiff was that there was only a thin dusting of snow. *** [I]f that's the case, the fair inference from that is that it was not enough to trigger a contractual duty on McGill's part to go and remove that snow. The contract indicating that the only time that they were required to do snow and ice removal was if there was more than 2 inches of show. Moreover, there was no evidence in the record that Woodstone had ever requested in the immediate past that Woodstone salt the area where the plaintiff fell.
>
> There was also nothing in the record to indicate that previous snow and ice removal by McGill has caused snow and ice to thaw and refreeze in the area where the plaintiff slipped and fell.
>
> In other words, there was no, as I said, sort of a trail or a stream of what would appear to be thawed water, refrozen water, those slick spots you could see would be coming from a mound of snow that in those instances the courts have found it indicates negligent snow removal and for which liability might lie; but here there isn't any of that evidence."

¶ 15 The court then stated that it "t[ook] some issue" with plaintiff's contention that he was "not suing for unnatural accumulation of snow and ice, he's suing because of the defective design of the drainage system." The court noted that the argument "really [wa]sn't reflected in the complaint." Nonetheless, even if assuming that the argument was raised, the court stated that

> "the only testimony we have is that during the summer the plaintiff had seen water from the downspout flowing in the direction of where he fell; but again, the standard for proximate causation is probability, not possibility. Without something further in the record to indicate that it's probable that water had come from that downspout and created that slick spot on the sidewalk it would only remain a possibility, and that was insufficient for purposes of summary judgment."

¶ 16 The court thus concluded that "without that sort of evidence [that the accumulation was unnatural] *** there simply is not enough as a matter of fact to create a question of material fact" and "as a matter of law[,] liability cannot lie." Accordingly, the court entered a written

order, granting both McGill's and Woodstone's motions for summary judgment and dismissing the matter with prejudice.

¶ 17    On March 2, 2018, plaintiff filed a motion for reconsideration of that order. Plaintiff stated that the court relied on *Allen v. Cam Girls, LLC*, 2017 IL App (1st) 163340, in granting summary judgment, when that case was not cited by the parties, and it was decided during briefing of the summary judgment motions. Plaintiff stated that the case was "distinguishable from the facts of the instant case" because the plaintiff in *Allen* was unsure of what caused her fall, whereas plaintiff here knew that he fell on ice. Plaintiff claimed instead, the court should have found *Murphy-Hylton*, 2016 IL 120394, to be controlling. Plaintiff also asserted that the fact that there was less than two inches of snow did not absolve McGill of its duty because a different contractual provision stated that "[a]ll fire hydrants and mailboxes will be kept accessible at all times as part of this contract."

¶ 18    On May 15, 2018, the court held a hearing on plaintiff's motion for reconsideration. The court rejected plaintiff's attempts to distinguish *Allen*, noting that the case "really stands for the same principle that's always existed, that there must be a showing that the snow and ice was unnatural." The court noted that the contract with McGill called for snow removal only when there was more than two inches or accumulation and that "there [was] no contest that the amount of snow [that] existed was less than that." The court also stated that there was no evidence indicating that previous snow removal efforts had caused "any snow or ice to accumulate or *** to thaw and refreeze."

¶ 19    The court further noted that the "only thing that [plaintiff] points to is that he saw that—well, prior in the summertimes he would see that there was runoff from rain that would go to the area approximately where he fell." The court stated that such arguments were counter to what was alleged in his complaint, but nonetheless, there was no indication that the ice here was caused by any defect in the adjoining property. The court also rejected plaintiff's argument based on the provision of the McGill contract regarding access to the mailboxes, noting that there was

> "nothing to indicate that, in fact, access to the mailboxes had been restricted. The only issue is that there happened to be some black ice under some snow near the mailboxes. So access hadn't been denied to the mailboxes; it's just that there was a condition on the sidewalk leading up to them."

¶ 20    The court then stated that it had reviewed the cases again, and found nothing

> "that indicates that the plaintiff has met [his] burden of showing that it is probable that either of the defendants caused the unnatural accumulation which he slipped and fell; and given the fact that there aren't facts to support a question of material fact as a matter of law, the decision of the Court previously was the correct one, and consequently the motion to reconsider is going to be denied."

The court then entered a written order denying plaintiff's motion for reconsideration. Plaintiff filed a timely notice of appeal on June 6, 2018.

¶ 21    In this court, plaintiff contends that the court erred in granting summary judgment to defendants. Plaintiff argues that, in the circuit court, "this case was framed primarily as a choice between two cases": *Allen*, 2017 IL App (1st) 163340, and *Murphy-Hylton*, 2016 IL 120394. Plaintiff asserts that the circuit court erred in relying on *Allen* and not *Murphy-Hylton* when ruling on the motions for summary judgment.

¶ 22 Summary judgment is appropriate where "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). We must construe the record strictly against the movant and liberally in favor of the nonmoving party. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). In order to prevail, the nonmoving party must present some evidence that would arguably entitle him to recover at trial. *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 472 (2010). We review the trial court's grant of summary judgment *de novo*. *Williams*, 228 Ill. 2d at 417.

¶ 23 "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). " 'The purpose of summary judgment is not to try an issue of fact but *** to determine whether a triable issue of fact exists.' " *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (quoting *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)).

¶ 24 "Property owners have a duty to exercise ordinary care in maintaining their property in a reasonably safe condition." *Nguyen v. Lam*, 2017 IL App (1st) 161272, ¶ 20. However, it has long been the rule under the common law that landowners owe no duty to remove natural accumulations of snow and ice from their property. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 227 (2010); *Riccitelli v. Sternfeld*, 1 Ill. 2d 133, 137 (1953); *Graham v. City of Chicago*, 346 Ill. 638, 641 (1931). The rule recognizes that to hold otherwise would create an unreasonable burden of vigilance when considering that snowstorms cannot be foreseen or controlled (see *Tzakis v. Dominick's Finer Foods, Inc.*, 356 Ill. App. 3d 740, 748 (2005)), and that " 'it is unrealistic to expect property owners to keep all areas where people may walk clear from ice and snow at all times during the winter months' " (*Claimsone v. Professional Property Management, LLC*, 2011 IL App (2d) 101115, ¶¶ 18, 21 (quoting *Ordman v. Dacon Management Corp.*, 261 Ill. App. 3d 275, 281 (1994))).

¶ 25 However, a property owner may be liable for injuries that occur from an unnatural accumulation of snow or ice or an accumulation aggravated by the owner. *Id.* Therefore, to survive summary judgment, plaintiff must sufficiently show that the unnatural accumulation of snow or ice was caused by the property owner. *Tzakis*, 356 Ill. App 3d at 746; *Frederick v. Professional Truck Driver Training School, Inc.*, 328 Ill. App. 3d 472, 476 (2002) (summary judgment for defendant was proper where no evidence indicated that the accumulation on which plaintiff slipped was unnatural). At a minimum, plaintiff must sufficiently allege an identifiable cause of the ice formation. *Rush v. Simon & Mazian, Inc.*, 159 Ill. App. 3d 1081, 1084 (1987).

¶ 26 In this case, the only evidence showed that there was a thin dusting of snow, of less than one inch, covering a patch of ice. There was no evidence to indicate that the ice was not a natural accumulation or that McGill had engaged in previous snow and ice removal efforts that caused the ice to refreeze in the area where plaintiff fell. In such circumstances, summary judgment is appropriate.

¶ 27     Plaintiff, however, contended that he was "suing because [of] the defective design of the drainage system," speculating that the ice was caused by runoff from the nearby downspout. Initially, we agree with the circuit court that plaintiff's complaint did not raise any such claims, and in fact, no mention of a downspout or the drainage system was made in plaintiff's complaint at all. Nonetheless, even if we were to construe the complaint as including such a claim, we would still find the circuit court's grant of summary judgment proper.

¶ 28     Our supreme court has recognized that liability for a fall due to an unnatural accumulation of ice may be based on a defective condition or negligent maintenance of the premises. *Murphy-Hylton*, 2016 IL 120394, ¶ 21. "Under the negligent maintenance cases, courts recognize that the construction and maintenance of landowners' premises are matters within their control." *Id.* Accordingly,

> "to hold them to a duty of reasonable care under these circumstances does not impose an undue burden on them not to 'add to the difficulties facing Illinois residents from natural accumulations of ice and snow by permitting unnatural accumulations due to defective construction or improper or insufficient maintenance of the premises.' " *Id.* (quoting *Bloom v. Bistro Restaurant Ltd. Partnership*, 304 Ill. App. 3d 707, 711 (1999)).

"A finding of an unnatural or aggravated natural condition must be based upon an identifiable cause of the water accumulation." *Branson v. R&L Investment, Inc.*, 196 Ill. App. 3d 1088, 1094 (1990). "Absent such a showing, summary judgment for the defendant is appropriate since the court owes no duty to reason some remote factual possibility." *Id.* at 1095.

¶ 29     Here, plaintiff believed that the cause of the ice on which he slipped was runoff from a downspout on a nearby building. Plaintiff, however, did not see any evidence of runoff from the downspout on the day of his fall, stating only that he had seen the runoff occur on an unspecified number of occasions during the summertime. There was no sign of water flowing from the downspout to the sidewalk. Plaintiff presented no evidence, from an expert or otherwise, that it was probable that the cause of the ice on which he fell was from runoff from the downspout, which had flowed across the lawn and pooled in the area of plaintiff's fall. See *Majetich v. P.T. Ferro Construction Co.*, 389 Ill. App. 3d 220, 225 (2009) ("If plaintiff relies upon circumstantial evidence to establish proximate cause to defeat a motion for summary judgment, the circumstantial evidence must be of such a nature and so related as to make the conclusion more probable as opposed to merely possible."). It is axiomatic that mere guesswork or speculation is insufficient to create a genuine issue of material fact to survive a motion for summary judgment. *Judge-Zeit v. General Parking Corp.*, 376 Ill. App. 3d 573, 584 (2007) (citing *Tzakis*, 356 Ill. App. 3d at 747); *Sorce*, 309 Ill. App. 3d at 328 ("Mere speculation, conjecture, or guess is insufficient to withstand summary judgment."). Without any evidence, more than mere speculation, that the ice on which plaintiff fell accumulated due to a defective condition or negligent maintenance of the premises, summary judgment for defendants was proper.

¶ 30     In *Murphy-Hylton*, 2016 IL 120394, the case primarily relied on by plaintiff, the supreme court considered the question of whether the Act (745 ILCS 75/0.01 *et seq.* (West 2010)), which provides immunity to residential property owners for injuries allegedly caused by negligent snow and ice removal efforts, applied in cases where the injuries were caused "from an otherwise negligent failure to maintain the premises." *Murphy-Hylton*, 2016 IL 120394, ¶ 41.

¶ 31    The plaintiff in *Murphy-Hylton* slipped on ice on a sidewalk outside her condominium complex. *Id.* ¶ 4. In an amended complaint, she alleged that the defendants, the condominium association and management company, were negligent in failing to repair downspouts or properly direct the drainage of water to prevent an unnatural accumulation of ice on the sidewalk. In various depositions, several witnesses testified to accumulations of water and ice on the sidewalk where plaintiff fell, caused by a downspout that directed water to that area. One neighbor testified that he also slipped and fell in the same area on the same morning as the plaintiff's fall. *Id.* ¶ 6. He had observed water collecting on the sidewalk since he had moved in several years prior. He was told by another resident that they could not put mulch down in that area because "the mulch would all wash away from the water draining down from the gutters and the downspouts." *Id.* Another witness also testified to seeing standing water on the sidewalk where the plaintiff fell on the same night or next day. *Id.* ¶ 7. He also slipped and almost fell in the same spot a day or two after the plaintiff's fall. The president of the condominium complex and two property managers testified that they were aware of water collecting on and around sidewalks in other areas of the complex, and that drainage work was being done in other areas of the complex based on resident complaints of water pooling and mulch being washed away. *Id.* ¶¶ 8-9. When shown photographs of the area where the plaintiff fell showing standing water on the sidewalk, one property manager agreed that the photos were consistent with the drainage issues in other areas of the property. *Id.* ¶ 10.

¶ 32    The defendants in *Murphy-Hylton* filed a joint motion for summary judgment, arguing that they were immune from suit under the Act. *Id.* ¶ 12. The circuit court agreed, granting summary judgment. The appellate court, however, determined that the Act did not apply, and reversed and remanded the matter for further proceedings. *Id.* ¶ 13. In affirming the appellate court, the supreme court found that "the immunity provided under the Act does not insulate defendants from the theory of liability in the instant case." *Id.* ¶ 35. The supreme court concluded that the Act

> "provides immunity to residential property owners from claims of liability for injuries allegedly caused by icy sidewalks that result from negligent snow and ice removal efforts, but it does not extend to immunize them from claims of liability for injuries allegedly caused by icy sidewalks that result from an otherwise negligent failure to maintain the premises." *Id.* ¶ 41.

¶ 33    As an initial matter, we note that the plaintiff in *Murphy-Hylton* actually filed an amended complaint in which she specifically raised a claim regarding negligent maintenance, whereas plaintiff here did not. Moreover, the supreme court in *Murphy-Hylton* did not consider whether there was "sufficient evidence to present that theory of negligence to the trier of fact," merely "hold[ing] that the Act is not an affirmative defense to plaintiff's theory of negligence." *Id.* ¶ 36.

¶ 34    In this case, summary judgment was not granted based on immunity under the Act; accordingly, the holding of *Murphy-Hylton* does not direct our resolution of this case. Nonetheless, although the supreme court did not actually consider this issue, we also note that the evidence presented in *Murphy-Hylton* regarding the source of the ice was far more substantial than the mere speculation provided by plaintiff here. Accordingly, we conclude that the circuit court correctly granted summary judgment to defendants based on the lack of evidence showing that the accumulation was unnatural.

¶ 35    Specifically as to defendant McGill, plaintiff also contends that the court erred in granting summary judgment based on the "contractual duty" McGill undertook to keep "all fire hydrants and mailboxes *** accessible at all times." Plaintiff contends that McGill failed to make any effort to perform its contractual duty, and cites *Allen*, 2017 IL App (1st) 163340, ¶ 33, for the proposition that "if a defendant is required by contract to remove snow and ice, and the defendant makes no attempt to do so, then it may be held liable for injuries resulting from natural accumulations of snow and ice."

¶ 36    We note that the passage of *Allen* quoted by plaintiff was the *Allen* court's discussion of the holding of another case—*Eichler v. Pitt Theaters, Inc.*, 167 Ill. App. 3d 685, 687 (1998). *Allen* went on to discuss that many cases had declined to follow *Eichler* and have found that "even if defendant had a contractual duty to remove naturally fallen snow and ice, a plaintiff must still show as a prerequisite to recovery that she fell on an unnatural accumulation of snow and ice." *Allen*, 2017 IL App (1st) 163340, ¶ 36. The *Allen* court noted that the plaintiff and the defendants each urged the court to follow, respectively, *Eichler* and a case rejecting *Eichler*; however, the court found that it need not decide which standard was appropriate since the plaintiff's claim failed under both.

¶ 37    We, too, find that we need not decide whether *Eichler* applies to allow liability based on a contractual duty to remove naturally-fallen snow and ice. Even if *Eichler* applies, we find no contractual duty on the part of McGill to remove the ice at issue here. It is undisputed that the contract between Woodstone and McGill provided that McGill would provide snow removal services after snowfalls of two inches or more and that there was less than one inch of snow at the time of plaintiff's fall. The contract between Woodstone and McGill also recognized that some ice and snow would remain on the ground after plowing and that salt would only be provided "[u]pon [Woodstone]'s request."

¶ 38    Plaintiff, however, contends that the contract required McGill to keep "[a]ll fire hydrants and mailboxes *** accessible at all times as part of the contract." Because plaintiff was walking on the sidewalk towards the mailboxes to get his mail when he fell, plaintiff contends that McGill failed in its duty to keep the mailboxes "accessible." We do not believe that plaintiff's interpretation is a reasonable reading of the contract.

¶ 39    The primary goal of contract interpretation is to give effect to the parties' intent in entering the contract. *McRaith v. BDO Seidman, LLP*, 391 Ill. App. 3d 565, 577 (2009). To discern the parties' intent, a court must read the contract as a whole with all parts construed together (*J.M. Process Systems, Inc. v. W.L. Thompson Electric Co.*, 218 Ill. App. 3d 350, 354 (1991)), and should not focus only on isolated portions (*Cress v. Recreation Services, Inc.*, 341 Ill. App. 3d 149, 170 (2003)). We presume that each contractual provision was inserted deliberately and for a purpose consistent with the parties' intent, and if possible, we must interpret a contract in a manner that gives effect to all of the contract's provisions. *Bank of America National Trust & Savings Ass'n v. Schulson*, 305 Ill. App. 3d 941, 946 (1999).

¶ 40    In light of the above principles, it is clear to this court that the provision requiring McGill to keep all fire hydrants and mailboxes accessible does not apply to the circumstances of this case. The remainder of the contract specifically provides that McGill would provide snow removal services after snowfalls of two inches or more and provide salt only upon request. Reading the contract as a whole, the parties' intent in providing that McGill keep "[a]ll fire hydrants and mailboxes *** accessible at all times as part of the contract," appears to be that McGill was required to refrain from conducting its snow removal efforts in a way that would

create piles of snow in front of the mailboxes, or otherwise prevent residents from reaching their mailboxes. It is not reasonable to conclude that such a provision created a whole new duty on McGill to monitor and ensure that all sidewalks and areas of the property were clear of snow and ice at all times, so that residents would never encounter snow or ice on their way to the mailboxes. Such an interpretation cannot be countenanced in light of the remainder of the contract.

¶ 41 As the circuit court noted, evidence showing that there was ice on the sidewalk near the mailboxes does not mean that access to the mailboxes had been denied. We note that the evidence did not show that plaintiff was prevented from accessing the mailboxes at the time of his fall. Although the evidence showed that plaintiff was walking in the direction of the mailboxes, there was no evidence to show that he was particularly close to the mailboxes when he fell. To the contrary, during Corey's deposition, she identified a photograph of the location where plaintiff fell. She noted that the mailboxes were out of frame, to the left of the photograph. Based on the photograph, it appears that there is significant distance, at least the width of one and one-half townhomes from the area where plaintiff fell and the location of the mailboxes out of frame. In these circumstances, we find no evidence to show that McGill had a contractual duty to clear the sidewalk on which plaintiff was walking, and accordingly, summary judgment for McGill was properly granted.

¶ 42 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 43 Affirmed.