MARIANNE EICHLER et al., Plaintiffs-Appellants, v. PLITT THEATRES, INC., et al., Defendants-Appellees.

Second District   No. 2—87—0591

Opinion filed March 28, 1988.

Paul G. Krentz, of Murphy, Hupp, Foote, Mielke & Kinnally, of Aurora, for appellants.

Alfred Y. Kirkland, Jr., of Brady, McQueen, Martin, Collins & Jensen, of Elgin, for appellee Plitt Theatres, Inc.

Donald Eugene Green, of Bullaro & Carton, of Chicago, for appellees Urban/JMB Group Trust II Partnership and Alan Hausky & Associates, Ltd.

Jon Yambert, of Lindner, Speers & Reuland, P.C., of Aurora, for appellee Welhausen Landscape Company.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff Marianne Eichler brought suit for damages sustained due to injuries received when she slipped and fell on snow and ice. Her husband, Fred Eichler, brought suit for loss of consortium. The trial court entered summary judgments in favor of defendants on plaintiffs' fifth amended complaint. We reverse in part and affirm in part.

The facts of this case are not in dispute. On January 26, 1985, plaintiffs went to the Fox Valley Shopping Center to see a movie at the Plitt Movie Theatres. On that evening, the parking lot where plaintiffs parked was covered with ice. As plaintiffs were walking across what is known as the "North Parking Parcel," Marianne Eichler slipped and fell on the ice and as a result sustained personal in-

juries. Plaintiffs concede that there was no unnatural accumulation of snow or ice at the time of the fall.

At the time of the fall, defendant Urban/JMB Group Trust II Partnership (Urban) was the beneficial owner of La Salle National Bank trusts Nos. 47699 (Urban trust I) and 52471 (Urban trust II). Defendant Allen Hutensky Associates (Hutensky) was the beneficial owner of La Salle National Bank trust No. 101293 (Hutensky trust). (We note that Hutensky was incorrectly sued as "Alan Hausky & Associates.") The above-mentioned trusts were the owners of several contiguous parcels of land at the Fox Valley Shopping Center which were used for parking. The "North Parking Parcel" in which Marianne Eichler fell was owned by Urban trust II. The Urban trusts entered into an easement agreement (easement agreement) with the Hutensky trust concerning their various rights with regard to these parcels of land. The agreement provided in pertinent part:

"Each party agrees that its obligation to maintain the Parking Facilities on its Parcel or Parcels *** shall consist of repairing, maintaining and reconstructing the Parking Facilities so as to keep same in a clean, sightly and safe condition consistent with and similar to the Fox Valley Shopping Center Parking Facilities and shall include, but not be limited to, the prompt removal of all paper, debris, refuse, snow and ice ***."

The easement agreement also provided:

"The parties agree and acknowledge that their respective rights under this Agreement are not subject to satisfaction by monetary damages, and thereby agree that specific performance by way of injunctive relief is the only method of securing such rights under this Agreement ***."

Shortly after the easement agreement was entered into, a lease agreement, which was in effect at the time of the fall, was entered into between Urban trust II and defendant Plitt Theatres, Inc. (Plitt). The lease agreement provided that Urban trust II granted and Plitt accepted Urban trust II's rights and obligations under the easement agreement.

Also at the time of the fall, defendant Welhausen Landscape Company (Welhausen) had contracted with Urban to perform snow plowing and snow removal (Welhausen agreement).

■■ The general rule, which plaintiffs do not dispute, is that there is no duty to remove natural accumulations of snow and ice. *Galivan v. Lincolnshire Inn* (1986), 147 Ill. App. 3d 228, 229; *Bakeman v. Sears, Roebuck & Co.* (1974), 16 Ill. App. 3d 1065, 1068.

Plaintiffs, however, contend that while there is no common law

duty to remove snow and ice, such a duty existed in the present case because defendants entered into a contract in which they undertook the obligation of removing snow and ice. Plaintiffs thus argue that defendants are liable in tort for a duty they have assumed in contract and that summary judgment for defendants was therefore inappropriate. Defendants, on the other hand, contend that summary judgment in their favor was appropriate. Defendants argue that the easement agreement created no duty in tort to remove all snow and ice, and that even if such a duty was created, plaintiffs are limited from recovering money damages because the easement agreement specifically precluded monetary damages and limited the parties' remedies to seeking an injunction. Welhausen additionally argues that summary judgment was appropriate to it because it contracted only to remove snow, not ice. We agree that summary judgment was inappropriate as to Plitt and Urban, but find that it was appropriate as to Hutensky and Welhausen.

In both *Schoondyke v. Heil, Heil, Smart & Golee, Inc.* (1980), 89 Ill. App. 3d 640, and *Tressler v. Winfield Village Cooperative, Inc.* (1985), 134 Ill. App. 3d 578, it was held that a duty in tort arose from a contractual obligation to remove snow. However, more recently in *Burke v. City of Chicago* (1987), 160 Ill. App. 3d 953, the Appellate Court for the First District upheld a summary judgment in favor of all defendants involved in a slip and fall case where there was a contract to remove snow.

In *Burke*, defendant, City of Chicago (Chicago), leased certain portions of Midway Airport to Northwest Airlines. Under their lease agreement, Chicago agreed to " 'keep the Airport free from obstruction, including the removal of snow *** as reasonably as may be done ***.' " (160 Ill. App. 3d at 955.) Chicago contracted with McKay and Beemsterboor for snow removal at the airport. 160 Ill. App. 3d at 955.

On the day which the plaintiff in *Burke* fell, snow had fallen in excess of two inches. (160 Ill. App. 3d at 955.) Prior to the plaintiff's fall, snow removal equipment had plowed the area on which the plaintiff fell, and no more snow had fallen since that time. (160 Ill. App. 3d at 955.) However, what remained after the plowing had turned to ice. (160 Ill. App. 3d at 955.) It was further shown that Chicago had previously spread sand and urea after snowplowing even though there was no contractual obligation to do so. 160 Ill. App. 3d at 955.

The court found that even under *Schoondyke* and *Tressler* summary judgment in favor of defendants was appropriate. (160 Ill. App. 3d at 957.) The court distinguished *Schoondyke* and *Tressler* from the

facts with which it was presented, noting that no plowing had occurred in either of those cases. (160 Ill. App. 3d at 957.) Because there had been plowing in *Burke,* the court found that such plowing would have to be shown to have been defective in order to show a breach of duty. (160 Ill. App. 3d at 957.) The court further found that to find defective plowing, it would have to conclude that Chicago had a duty to remove all snow. (160 Ill. App. 3d at 957.) The court found that such a duty had not been assumed as the lease provided for the removal of snow " 'as reasonably may be done.' " 160 Ill. App. 3d at 957.

The court also found that Chicago had not breached a duty to throw salt or urea. The court reasoned that in the past Chicago had done this as a gratuitous undertaking and that such did not create a continuing duty to perform the function. 160 Ill. App. 3d at 957.

We find that the holdings of *Schoondyke* and *Tressler* are not diminished by *Burke* due to the fact that the *Burke* court distinguished those two cases on the facts with which it was presented.

We further find our supreme court's opinions in *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, and *Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, to be controlling in this case.

In *Pippin,* plaintiff brought an action against the Chicago Housing Authority (Authority) and Interstate Service Corporation (Interstate) for the wrongful death of her son, Fredrick Pippin. (*Pippin,* 78 Ill. 2d at 206.) Fredrick Pippin, while in the lobby of a housing project owned by the Authority, was stabbed during the course of an argument. (78 Ill. 2d at 206-07.) The stabbing occurred in front of two security guards who were employed by Interstate. 78 Ill. 2d at 206.

At the time of the stabbing a contract existed between the Authority and Interstate whereby Interstate was to provide armed guards and other protective services for the purpose of guarding the Authority's property and persons thereon. (78 Ill. 2d at 207.) With respect to Interstate's liability, the court found section 324 A of the Restatement (Second) of Torts to be applicable. (78 Ill. 2d at 210.) That section states:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk

of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Restatement (Second) of Torts §324 A (1965) (hereinafter cited as section 324 A).)

In applying section 324 A, the court held that by contracting with Interstate the Authority relied upon Interstate to perform its undertaking. (78 Ill. 2d at 211.) The court concluded that plaintiff had therefore satisfied the reliance requirement of section 324 A(c), so as to give rise to a duty owed by Interstate to Pippin. 78 Ill. 2d at 211.

In *Scott & Fetzer*, Montgomery Ward & Co. (Wards) occupied a portion of a large warehouse. (*Scott & Fetzer*, 112 Ill. 2d at 382.) Wards had contracted with Burns Electronic Security Services, Inc. (Burns), to maintain and install fire-warning systems in that portion of the warehouse that Wards occupied. (112 Ill. 2d at 382.) A fire broke out in the portion of the warehouse occupied by Wards and spread throughout the building, causing damage to the property of Wards and other tenants in the building. (112 Ill. 2d at 382-83.) The other tenants brought actions in tort against Wards and Burns. In their actions against Burns, the tenants sought damages for property damage due to the negligent performance of Burns' contractual obligation to Wards. 112 Ill. 2d at 385.

Burns argued that it had no legal duty to guard against the losses of the tenants. (112 Ill. 2d at 388.) Burns argued that under *Lance v. Senior* (1967), 36 Ill. 2d 516, 518, a legal duty could only be imposed after a court had taken into account " '[t]he likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant ***.' " *Scott & Fetzer*, 112 Ill. 2d at 388.

The court noted that in *Pippin*, it had impliedly adopted section 324 A. (112 Ill. 2d at 388.) The court then found that by entering into the agreement, Wards, as a matter of law, relied upon Burns to perform its undertaking. (112 Ill. 2d at 390-91.) The court then went on to find that for a duty to arise under subsection (c), it was unnecessary to establish that the tenants had relied on the undertakings of Burns since Wards had relied on those undertakings. (112 Ill. 2d at 391.) Thus, the court held that tenants had sufficiently alleged a duty owed by Burns to the tenants. 112 Ill. 2d at 391.

■ In the present case, the service which defendants are alleged to have undertaken is the removal of all snow and ice. Because the presence of snow and ice can cause individuals to slip and fall, we find

that its removal is a service which should be recognized as necessary for the protection of third parties. We therefore are of the opinion that section 324 A is applicable to the present case. However, we find that section 324 A does not apply to all defendants equally.

■ As to Welhausen, we find that summary judgment was appropriate because under the Welhausen contract, Welhausen contracted to remove snow only, not ice. It therefore had no duty arising out of the contract to remove ice. And, where one has voluntarily undertaken to remove snow, the "removal of snow, which leaves a natural accumulation of ice on the surface, does not itself constitute negligence." (*Erasmus v. Chicago Housing Authority* (1980), 86 Ill. App. 3d 142, 145.) Plaintiff must show that the exposed ice was itself an unnatural accumulation created by defendant. (86 Ill. App. 3d at 145; see also *Burke*, 160 Ill. App. 3d at 957.) In the instant case, it is evident from Marianne Eichler's affidavit that she slipped on ice and not snow. Plaintiffs also concede that the ice which caused Marianne's fall was a natural accumulation. We therefore conclude that as a matter of law there was no negligence on behalf of Welhausen, and summary judgment was therefore properly entered as to Welhausen.

■ We also find that summary judgment in favor of Hutensky was appropriate because Hutensky did not own the parcel upon which Marianne Eichler fell. Under the easement agreement, each party to the agreement was only required to remove snow and ice from "its Parcel or Parcels." Since Hutensky did not own the parcel of land upon which Marianne Eichler fell, it did not undertake a contractual obligation to remove snow and ice from that parcel. Consequently, Hutensky had no duty arising in tort to remove the ice upon which Marianne Eichler fell. We therefore hold that the summary judgment in favor of Hutensky was appropriate.

■ As to Urban, we find summary judgment to have been inappropriate. In the instant case, Urban promised Hutensky that it would remove snow and ice from the north parking parcel. Under *Scott & Fetzer*, we find that this promise was sufficient for Hutensky to rely on, and that reliance was in turn sufficient to establish a duty on Urban's part. Consequently, we find that the summary judgment in favor of Urban was inappropriate.

■ We also find that summary judgment was inappropriate as to Plitt. In the lease agreement that Plitt entered into with Urban trust II, Plitt assumed all of Urban trust II's obligations under the easement agreement. Therefore, Plitt assumed the obligation to remove all snow and ice. We find that Plitt's promise to remove snow and ice created reliance on Urban's part sufficient to find a duty under *Scott*

*& Fetzer.* We note, however, that whether Urban actually relied on the lease agreement is a question which may be further developed. Despite Plitt's promise to assume the obligations of Urban, the record shows that it was Urban that contracted with Welhausen for snow removal. Thus, there is at least an implication that Urban did not rely on Plitt's promise.

We do agree with Plitt that although the easement agreement requires the removal of "all" snow and ice, neither Plitt nor Urban was required to remove every bit of ice that accumulated. Contracts must be reasonably construed so as not to lead to absurd results. (See *Business Development Services, Inc. v. Field Container Corp.* (1981), 96 Ill. App. 3d 834, 839; *Camp v. Hollis* (1947), 332 Ill. App. 60, 68.) To find that defendants were under an obligation to remove every bit of snow and ice that accumulated in the parking lot would be absurd indeed. In Plitt's words, it would create a sisyphean duty. We therefore decline to interpret the easement agreement as requiring the removal of every bit of snow and ice. Moreover, under section 324 A(c) of the Restatement the reliance must be such that it induced another to "forgo other remedies or precautions." (Restatement (Second) of Torts §324 A, comment *e* (1965).) We find that a promise such as the one made here would not induce anyone to forgo removing "all" snow and ice due to the fact that it is unreasonable to believe that anyone would undertake such a task. Nevertheless, we find that the requirement that all snow and ice be removed at least requires the removal of all snow and ice that is reasonably practical. Consequently, since the complaint alleged that Plitt and Urban had failed promptly to remove ice from the parking lot, and the deposition of Marianne Eichler which was attached to the motion for summary judgment went to show that the north parking parcel was covered with ice, whether either Urban or Plitt was negligent is a question of fact. Summary judgments in favor of Plitt and Urban were therefore inappropriate. (See *Pippin v. Chicago Housing Authority* (1978), 58 Ill. App. 3d 1029, 1038-39, *aff'd* (1979), 78 Ill. 2d 204.) In finding that these summary judgments were inappropriate, we note that this case is distinguishable from *Burke* in that with regard to the throwing of salt in that case, Chicago was under no contractual obligation to do so. *Burke*, 160 Ill. App. 3d at 955.

Finally, we find that, contrary to the assertions of Plitt and Urban, the clause in the easement agreement which precludes the parties to the agreement from obtaining money damages does not bar plaintiffs from recovering money damages. In *Scott & Fetzer*, the court found that an exculpatory clause contained in Burns' contract

with Wards did not affect Burns' duty to the tenants since it only applied to Wards. (*Scott & Fetzer*, 112 Ill. 2d at 391.) However, had the contract included language that limited the liability to parties outside the contract, it appears that a different result would have been reached. (See 112 Ill. 2d at 392.) In the instant case, the clause in the easement agreement which precluded monetary damages referred to "their [the parties to the agreement] respective rights." Therefore, we conclude that under *Scott & Fetzer*, the clause limiting the parties to injunctive relief did not preclude plaintiffs from recovering monetary damages.

In accordance with the preceding discussion, we reverse the summary judgments entered in favor of Plitt and Urban and affirm the summary judgments entered in favor of Hutensky and Welhausen.

Reversed in part and affirmed in part.

HOPF and NASH, JJ., concur.