GRACE McBRIDE, Plaintiff-Appellant, v. TAXMAN CORPORATION *et al.*,
Defendants-Appellees.

First District (3rd Division)    No. 1—01—1166

Opinion filed January 30, 2002.

Kosin Law Office, Ltd., of Chicago (Marilyn I. Kosin and David X. Kosin, of counsel), for appellant.

Law Offices of Steven I. Rapaport, of Northbrook (Steven I. Rapaport, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:
Plaintiff, Grace McBride, alleged in her complaint that she fell on snow and ice outside the entrance to the Walgreens store where she was employed, on January 27, 1996. She appeals from the entry of summary judgment in favor of defendant the Taxman Corporation, the property manager of the shopping center where the Walgreens store was located, and defendant Arctic Snow and Ice Control, Inc., the snow-removal contractor. We affirm.

Plaintiff's complaint also named as defendants American National Bank & Trust Company of Chicago, as trustee under trust dated February 15, 1983; Walgreen Company; and Kedzie Plaza Associates, the owner of the shopping center.

Count I was brought against Taxman. Prior to January 27, 1996, Walgreens had entered into a lease with Taxman for the operation of a drug store. Pursuant to the lease, Taxman agreed to promptly remove snow and ice from sidewalks. It was alleged that Taxman negligently allowed the accumulation of ice and snow in areas of pedestrian travel, negligently failed to remove the accumulation of ice and snow in areas of pedestrian travel, and negligently failed to properly maintain the sidewalks and walkways around the drug store so that it would be safe for use by plaintiff.

Count II was brought against Arctic. Plaintiff alleged that Taxman had an agreement with Arctic to remove ice and snow from the sidewalk areas surrounding the Walgreens store. Plaintiff alleged that Arctic negligently failed to properly remove snow and ice from the sidewalks and walkways around the store, negligently created unnatural accumulations of snow and ice, and negligently failed to salt or otherwise treat the ice on the sidewalks and walkways.

Plaintiff settled with Kedzie Plaza Associates and with Walgreens, and counts IV and V were dismissed.

In the Walgreen lease, in a paragraph captioned "parking," Kedzie Plaza Associates agreed to remove snow and ice:

"It is an express condition of this lease that at all times during the continuance of this lease, Landlord shall provide, maintain, repair, adequately light when necessary during Tenant's business hours, clean, *promptly remove snow and ice* from, supervise and keep available the Parking Areas as shown on said attached plan (which Parking Areas shall provide for the parking of at least 290 automobiles), and also adequate service and [*sic*] receiving areas, pedestrian malls, sidewalks, curbs, roadways and other facilities appurtenant thereto." (Emphasis added.)

On October 10, 1995, Taxman signed, on behalf of the owner, Arctic's one-page "Snow Removal Proposal & Contract" (although dated August 7, 1995), for the term November 15, 1995, through April 15, 1996, for the shopping center where this Walgreens store was located. The contract contained a disclaimer for ice-related accidents.

Also on October 10, 1995, Arctic and Taxman signed a multipage document dated October 3, 1995, that was apparently drafted by Taxman. The document was not given a title but contained several pages of terms concerning snow removal "per contract(s) attached." The document stated that "all sidewalk areas shall be completely cleared of ice and snow from end-to-end."

Plaintiff testified at her deposition that she fell on ice and snow on the sidewalk near the entrance to Walgreens. She thought the ice had been there for about a week. She did not know how the ice had formed.

Taxman and Arctic moved for summary judgment arguing that Taxman was responsible only for managing the property and that property managers and snow-removal contractors owed no duty to the general public to remove natural accumulations of ice and snow. They also argued that plaintiff had not come forward with evidence that the ice upon which she fell was anything other than a natural accumulation.

The trial court granted summary judgment in favor of Taxman and Arctic, and plaintiff appealed. The appeal was dismissed for lack of jurisdiction because one defendant, American National Bank & Trust, had not been dismissed and because the order appealed from did not contain Supreme Court Rule 304(a) language (155 Ill. 2d R. 304(a)). On remand, the bank was dismissed as a defendant, and plaintiff appealed again.

## ANALYSIS

### I. Liability of Taxman

Plaintiff argues that the contract between Taxman and Arctic created a duty of Taxman to remove snow and ice for the benefit of plaintiff. Plaintiff characterizes Arctic as Taxman's agent.

■ A motion for summary judgment is to be granted if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005 (West 2000). The reviewing court's function is to determine *de novo* whether the entry of summary judgment was correct as a matter of law. *Cates v. Cates*, 156 Ill. 2d 76, 78, 619 N.E.2d 715 (1993).

■ The Arctic proposal and contract was signed "Kedzie Associates by the Taxman." The Taxman-drafted portion of the contract contained a line above the signature of Taxman's director of property management stating, "The Taxman Corporation, agent for per contracts attached." The latter document specifically stated that the contract was not an obligation of Taxman and that all liabilities were those of the owner and not Taxman. We conclude that Taxman was the management company for the property owner and entered into the two contracts for snow and ice removal only as the owner's agent.

Taxman did not assume a contractual obligation to remove snow or ice; it merely retained Arctic as a contractor on behalf of the owner. See *Grover v. Commonwealth Plaza Condominium Ass'n*, 76 Ill. App. 3d 500, 507, 394 N.E.2d 1273 (1979) (generally, agent whose agency is disclosed is not liable on agreement entered into on behalf of his principal). Plaintiff has not cited any contrary authority.

■ Plaintiff also argues that Taxman could be liable for Arctic's negligence because paragraphs 16 and 22 of the contract gave to Taxman a high degree of control as to how the snow and ice removal was to be accomplished.

Under paragraph 16, Taxman would withhold the final payment until the property had been examined for evidence of damage due to Arctic's conduct:

> "It is agreed and understood that the final payment to the snow removal firm will be held until the premises have been examined by a representative of The Taxman Corporation, along with a representative of the snow removal firm. If any repairs are necessary due to damage by the snow removal firm, said final payment will not be released by The Taxman Corporation until all such repairs have been accomplished to the satisfaction of and acceptance by The Taxman Corporation. Upon completion (and approval of said

repairs by The Taxman Corporation) payment will be authorized and disbursed within thirty (30) days after such inspection and acceptance by The Taxman Corporation."

Under paragraph 22, written notification after chemical applications or other services was to be given to Taxman for Taxman's verification:

"Written notification will be left at the job site after each chemical application and/or other services for The Taxman Corporation's verification (at a place designated by The Taxman Corporation), or, if so requested, contractor shall forward such notification to The Taxman Corporation via U.S. Mail (at or before time invoice for such services is rendered). See Exhibit D—The Taxman Corporation will provide these forms on request or contractor may photocopy Exhibit B for such use."

Paragraphs 16 and 22 do not provide for Taxman's control of Arctic's performance. Paragraph 16 gave Taxman only the ability to withhold the final payment if damage caused by Arctic was discovered. Paragraph 22 only gave Taxman the ability to verify written notification of the performance of services. Taxman was not given supervisory powers over when and how snow removal was performed.

We hold that Arctic was not Taxman's agent and that the trial court did not err in entering summary judgment in favor of Taxman.

## II. Liability of Arctic

Plaintiff next argues that Arctic had a contractual obligation to remove snow and ice and is liable to plaintiff for negligent snow and ice removal.

■ In the absence of a contractual obligation, there is generally no duty to remove natural accumulations of ice or snow. *Eichler v. Plitt Theatres, Inc.*, 167 Ill. App. 3d 685, 689, 521 N.E.2d 1196 (1988). A landowner may be liable if the accumulation was caused or aggravated by him. *Wells v. Great Atlantic & Pacific Tea Co.*, 171 Ill. App. 3d 1012, 1017, 525 N.E.2d 1127 (1988). A landowner's voluntary undertaking to remove snow and ice may subject him to liability if removal is performed negligently. *Wells*, 171 Ill. App. 3d at 1017.

■ There have been cases in which a duty to third parties has been imposed on the snow-removal contractor, but the duty was only not to negligently remove snow by creating or aggravating an unnatural accumulation of snow or ice. *E.g.*, *Madeo v. Tri-Land Properties, Inc.*, 239 Ill. App. 3d 288, 606 N.E.2d 701 (1992) (snow-removal contractor could be liable to grocery store customer who fell in adjacent parking lot for either creating an unnatural accumulation of ice or snow or for aggravating a natural accumulation of ice or snow); *Crane v. Triangle Plaza, Inc.*, 228 Ill. App. 3d 325, 330, 591 N.E.2d

936 (1992) (duty of snow-removal contractor to customer of parking lot was to perform snow removal in a nonnegligent fashion; to show breach plaintiffs had to show that contractor caused an unnatural accumulation of ice); *McCarthy v. Hidden Lake Village Condominium Ass'n*, 186 Ill. App. 3d 752, 758, 542 N.E.2d 868 (1989) (snow-removal contractor could be liable to condominium resident for defective plowing creating unnatural accumulation where condominium association contracted for snow plowing); *Wells v. Great Atlantic & Pacific Tea Co.*, 171 Ill. App. 3d 1012, 1018-19, 525 N.E.2d 1127 (1988) (snow-removal contractor hired by grocery store had duty to plaintiff, who was not identified in the opinion as a customer or otherwise and who fell in the parking lot, only to abstain from negligence; store was under no contractual obligation to remove snow, and contractor's obligation was owed only to the store); *Burke v. City of Chicago*, 160 Ill. App. 3d 953, 957, 513 N.E.2d 984 (1987) (snow-removal contractor hired by city, which leased portion of airport to airline, could only breach duty to airline employee, who fell on ice at airport after snow was plowed, by causing an unnatural accumulation or by negligently plowing).

The above cases did not find that a snow-removal contractor could be liable to third parties for the failure to perform snow removal—as opposed to performing an affirmative act that creates or aggravates an unnatural accumulation of snow or ice.

*Schoondyke v. Heil, Heil, Smart & Golee, Inc.*, 89 Ill. App. 3d 640, 411 N.E.2d 1168 (1980), is a case that involved the failure to plow snow. The defendants, who included a condominium association, a homeowners' association, and two corporations whose functions were not identified in the opinion, were held to owe a duty to plaintiff, a nonowner occupant of a condominium, who fell on unplowed snow on the premises of a condominium building. The court stated that the lack of a direct contractual relationship between plaintiff and defendant was not a defense because tort liability was measured by the scope of the duty and not by concepts of privity. *Schoondyke*, 89 Ill. App. 3d at 643.

Because plaintiff in *Schoondyke* fell on unplowed snow and was not injured due to negligent plowing, *Schoondyke* is distinguishable from the cases cited earlier. However, it is not clear whether one of the corporate defendants in *Schoondyke* was a snow-removal contractor. Therefore, the case cannot be considered to have expanded the liability of snow-removal contractors.

■ Plaintiff has not cited any cases holding that a snow-removal contractor has a duty to third parties to its contract to remove natural accumulations of snow and ice. Under the snow-removal contractor

cases, because there was no evidence that the snow and ice upon which plaintiff slipped unnaturally accumulated due to Arctic's conduct, Arctic cannot be liable to plaintiff.

Also in this case there was no evidence as to the height of the snow. Arctic, under the snow-removal contract, was not obligated to remove any snow until the snow reached a specific height. Without evidence of the height of the snow, Arctic was not obligated to perform snow-removal services for Kedzie Plaza Associates. We find that under the facts of this case Arctic had no duty to remove snow and ice.

It is unnecessary to reach the issue whether Arctic's disclaimer was effective to bar plaintiff's claim.

We hold that summary judgment was properly entered in favor of Arctic.

The judgment of the trial court is affirmed.

Affirmed.

WOLFSON and SOUTH, JJ., concur.